**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**LEVIN, PAPANTONIO, THOMAS, MITCHELL,
RAFFERTY & PROCTOR, P.A.**
Matthew D. Schultz
*mschultz@levinlaw.com*
316 South Baylen Street, Suite 600
Pensacola, Florida  32502-5996
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

*Counsel for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN MOLINARI, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INC. *and* EQUIFAX CONSUMER SERVICES LLC,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff John Molinari ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, alleges the following, based upon his personal knowledge and the investigation of his counsel. Plaintiff believes substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUBSTANTIVE ALLEGATIONS

1. This is a proposed class action against Equifax Inc. and Equifax Consumer Services LLC (together, "Equifax" or "Defendants") for:

   a. charging consumers for credit scores (the "Equifax Credit Scores") that Equifax did not derive from a credit scoring model that is widely distributed to lenders but instead is based on a vastly inferior and inaccurate model that is essentially useless to consumers; and

   b. misleading consumers concerning the Equifax Credit Scores by using a significantly different (and greatly inferior) credit scoring system for the Equifax Credit Scores than that used to give credit scores to lenders.

2. To entice Plaintiff and other consumers to acquire credit scores from it, Equifax conveyed to consumers through its website, www.equifax.com, that the Equifax Credit Scores were accurate, reliable, and widely used and were the same credit scores relied upon by lenders. Unfortunately for consumers, this was untrue.

3. More specifically, on its website's homepage, Equifax stated that consumers could find out "how [their] credit score is calculated," thereby misleadingly and confusingly indicating that there is only one credit scoring model for generating credit scores, as follows:



4.      Furthermore, if a consumer clicks the heading "PRODUCTS & SERVICES" on the website's homepage, a dropdown menu appears that also misleadingly and confusingly indicates that consumers only have one Equifax credit score ("See your Equifax® Credit Report and Credit Score, and get a summary of positive and negative factors impacting your credit score."):



5.  If the consumer clicks the "Equifax® Credit Report and Score" link, the website directs them to a page that offers the opportunity to purchase "your Equifax Credit Score," again misleadingly and confusingly indicating that consumers only have one Equifax credit score:



These webpages appeared to Plaintiff and other consumers during the Class Period, and Plaintiff and other consumers relied upon these representations to believe that the credit score they were receiving was the same credit score provided to and used by lenders.

6.  In truth, the Equifax Credit Scores that Equifax sold to consumers are not the credit scores used by the vast majority of lenders. Indeed, Equifax does not generate the Equifax Credit Scores using the credit scoring models that account for 90% of the market of scores sold to firms to use when making lending decisions (i.e., FICO credit scoring models). *See* Consent Order at ¶ 11, *Equifax Inc.*, No. 2017-CFPB-0001 (Jan. 3, 2017), Doc. No. 1, https://goo.gl/KnU5Vi ("The credit score models used most often by lenders are those developed by Fair Isaac Corporation

3

(FICO) . . . ."). Instead, Equifax generates the Equifax Credit Scores using a credit scoring model that is not widely distributed to lenders, and, as a result, is vastly inferior and of little value to consumers. *See id.* at ¶ 14 ("The Equifax Credit Score is an 'educational' credit score that is marketed to consumers and is rarely used by lenders.").

7. Equifax is well aware of the confusion that it creates. The U.S. Consumer Financial Protection Bureau ("CFPB") has taken action against Equifax "for deceiving consumers about the usefulness" of the Equifax Credit Scores. U.S. CONSUMER FIN. PROT. BUREAU, *Equifax Inc. and Equifax Consumer Services LLC*, WWW.CONSUMERFINANCE.GOV (last updated Jan. 3, 2017), https://goo.gl/JcVfkH. On January 3, 2017, the CFPB entered into a Consent Order with Equifax which required Equifax to pay fines totaling $2.5 million to the CFPB. *Id.* In the Consent Order, the CFPB found and concluded that:

> 15. [I]n numerous instances, Equifax marketed the Equifax Credit Score to consumers by representing, directly or by implication, that the Equifax Credit Score available for purchase by consumers was the same score that lenders use to make credit decisions.
>
> . . .
>
> 17. In fact…the Equifax Credit Scores that consumers purchased from Equifax were educational scores that were rarely used by lenders to make credit decisions.
>
> . . .
>
> 20. In numerous instances, there were significant and meaningful differences between the Equifax Credit Scores that Equifax sold to consumers and the variety of credit scores used by lenders.
>
> 21. As a result, in these instances, the scores Equifax sold to consumers presented an inaccurate picture of how lenders, who used other scores and data providers, assessed consumer creditworthiness.

4

> . . .
>
> 23. As described in Paragraphs 15 through 21, in connection with advertising, marketing, promoting, offering for sale, or sale of Equifax Credit-Related Products, in numerous instances Equifax represented, directly or indirectly, expressly or impliedly, that the credit scores it marketed and sold to consumers were the same scores typically used by lenders or other commercial users for credit decisions.
>
> 24. In fact, the credit scores Equifax marketed and sold to consumers were rarely the same scores used by lenders or other commercial users for credit decisions.
>
> 25. Thus, Equifax's representations, as described in Paragraph[] 15 . . ., were false or misleading and constituted deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

Consent Order at ¶¶ 15, 17, 20, 21, 25, *Equifax Inc.*, No. 2017-CFPB-0001 (Jan. 3, 2017), Doc. No. 1, https://goo.gl/KnU5Vi.

8. As a result of the significant difference between the Equifax Credit Scores that Equifax sells to consumers, and the credit scores provided to the vast majority of lenders, the Equifax Credit Scores do not meaningfully assist consumers in understanding how lenders will assess their creditworthiness or how lenders will make predictions about the consumers' future credit behavior, which is the very reason that Plaintiff and other consumers bought the Equifax Credit Scores in the first place.

9. During the period from June 5, 2013 to the date of to the present (the "Class Period"), Defendants marketed the Equifax Credit Scores in a manner that misled consumers, by concealing from the consumers that Equifax generated the Equifax Credit Scores using a credit scoring system that substantially differs (and is vastly inferior) from the credit scoring system United States lenders routinely use in connection with lending decisions.

10. In connection with Defendants' sale of the Equifax Credit Scores to consumers,

5

Defendants failed to prominently and clearly disclose that they generated the Equifax Credit Scores using a substantially different (and greatly inferior) credit scoring system than United States lenders routinely use in connection with lending decisions.

11. Defendants knew that the majority of reasonable consumers do not realize that multiple credit scoring systems exist.

## THE PARTIES

### Plaintiff John Molinari

12. Plaintiff John Molinari is a resident of Staten Island, New York, and he has no intention of changing his residence.

13. During the Class Period, Plaintiff bought an Equifax Credit Score on or about May 29, 2015, believing the credit score was the same one used by lenders (*e.g.* a FICO score).

14. Equifax injured Plaintiff in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), by providing him Equifax Credit Scores that were not "derived from a credit scoring model that is widely distributed to [lenders] by [Equifax] in connection with residential real property loans" and that did not "assist[] [Plaintiff] in understanding the credit scoring assessment of [Plaintiff's] credit behavior . . . and predictions about [Plaintiff's] future credit behavior . . . ." 15 U.S.C. § 1681g(f)(7)(A).

15. Like most consumers, Plaintiff believed the credit scoring system used to generate the Equifax Credit Scores he purchased was the same as the credit scoring system that lenders routinely use in connection with evaluating creditworthiness. In truth, it was not.

16. Unfortunately for Plaintiff, the credit score that Equifax sold to him is not based on an accurate or otherwise standard credit scoring system used in the vast majority of lending decisions in the United States. Consequently, the credit score that Equifax sold to Plaintiff was

6

essentially worthless to Plaintiff.

17. Had Plaintiff known about the significant differences between the Equifax Credit Scores he purchased and the credit score lenders routinely use, he would not have paid money to Equifax for the Equifax Credit Score.

**Defendant Equifax Inc.**

18. Defendant Equifax Inc. is a corporation organized under the laws of the State of Georgia.

19. Equifax Inc.'s principal executive offices are located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

20. Equifax Inc. stated the following in its Annual Report (Form 10-K) for the fiscal year ended December 31, 2016:

> Our U.S. operations are subject to numerous laws and regulations governing the collection, protection and use of consumer credit and other information, and imposing sanctions for the misuse of such information or unauthorized access to data. Many of these provisions also affect our customers' use of consumer credit or other data we furnish.
>
> Examples of the most significant of these laws include, but are not limited to, the following:
>
> *Federal Laws and Regulation*
>
> - FCRA - The United States Fair Credit Reporting Act ("FCRA") regulates consumer reporting agencies, ***including us***, as well as data furnishers and users of consumer reports such as banks and other companies. FCRA provisions govern the accuracy, fairness and privacy of information in the files of consumer reporting agencies ("CRAs") that engage in the practice of assembling or evaluating certain information relating to consumers for certain specified purposes. The FCRA limits the type of information that may be reported by CRAs, limits the distribution and use of consumer reports and establishes consumer rights to access and dispute their credit files. CRAs are required to follow reasonable procedures to assure maximum

7

>possible accuracy of the information concerning the individual about whom the report relates and if a consumer disputes the accuracy of any information in the consumer's file, to conduct a reasonable reinvestigation. CRAs are required to make available to consumers a free annual credit report. The FCRA imposes many other requirements on CRAs, data furnishers and users of consumer report information. Violation of the FCRA can result in civil and criminal penalties. . . .

Equifax Inc., Annual Report (Form 10-K), at 10 (Feb. 22, 2017), *available at* https://goo.gl/9HoyyX (emphasis added).

### Defendant Equifax Consumer Services LLC

21.   Defendant Equifax Consumer Services LLC is a limited liability company organized under the laws of the State of Georgia.

22.   Equifax Consumer Services LLC's principal executive offices are located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

23.   Equifax Inc. is the parent company of Equifax Consumer Services LLC.

## JURISDICTION AND VENUE

24. This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: Defendants do business within this District and sold credit scores to Plaintiff and others consumers who reside within this District.

25. This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4, under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that there are at least 100 members in the proposed plaintiff class and that the matter in controversy is well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

26. This Court also has original subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the action arises under federal law, namely, the FCRA.

27. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff is a resident of this District and bought his credit scores within this District.

## CLASS ALLEGATIONS

28. Plaintiff brings his First Claim to redress alternative violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* One alternative is based on willful violations of the FCRA. The other alternative is based on negligent violations of the FCRA. It shall be up to the factfinder to determine whether Equifax's violations of the FCRA are willful or negligent, based upon the facts presented at trial. Collectively, Plaintiff refers to the classes identified below in this paragraph as the "FCRA Class" or the "FCRA Classes."

      a.    Willful Violations. Plaintiff brings his First Claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons in the United States who at any time during the period from June 5, 2013, to the present were the subject of an Equifax Credit Score that Equifax supplied and who either:
>
> (i)     as a result of Equifax's willful violation of 15 U.S.C. § 1681g(f)(7)(A) elects, after proper notice, to accept statutory and punitive damages as authorized under 15 U.S.C. § 1681n ("FCRA Willful Violations Class A"), or
>
> (ii)     as a result of Equifax's willful violation of 15 U.S.C. § 1681g(f)(7)(A), elects, after proper notice, to prove at a separate proceeding, actual damages and punitive damages ("FCRA Willful Violations Class B").

      b.    Negligent Violations. In the alternative, Plaintiff brings his First Claim as a class action pursuant to Rule 23 on behalf of the following class:

> All persons in the United States who at any time during the period from June 5, 2013, to the present were the subject of an Equifax Credit Score that Equifax supplied and who, as a result of Equifax's negligent violation of 15 U.S.C. § 1681g(f)(7)(A) may show at a separate proceeding their actual damages ("FCRA Negligent Violations Class").

29.     Excluded from the FCRA Classes are: (a) Defendants, Defendants' board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

30.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

### Numerosity

31. At this time, Plaintiff does not know the exact number of members of the Class; however, given the nature of the claims and Equifax's widespread sale of Equifax Credit Scores to consumers, Plaintiff believes that members of the Classes are so numerous that joinder of them is impracticable.

### Commonality

32. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the Class members that predominate over questions that may affect individual Class members include:

   a. whether the Equifax Credit Scores that Equifax supplied the Class members violated § 1681g(f)(7)(A) of the FCRA;

   b. whether Equifax misrepresented and/or concealed material information concerning the Equifax Credit Scores that it sold to consumers; and

   c. whether Equifax injured Plaintiff and the Class members as a result of its deceptive and misleading advertising and business practices.

### Typicality

33. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendants' Equifax Credit Scores in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

### Adequacy

34. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions.

35. Plaintiff has no interests that conflict with those of the Class members.

**Injunctive and Declaratory Relief**

36. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

37. Defendants' conduct is generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

**Monetary Relief**

38. The requirements for maintaining a class action for monetary relief pursuant to Rule 23(b)(3) are met, as the questions of law or fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

39. Defendants engaged in a common course of conduct in contravention of the law Plaintiff seeks to enforce individually and on behalf of the other Class members. Similar or identical statutory violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

40. The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

    a. The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive

      litigation needed to address Defendants' conduct.

  b.    Furthermore, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent, varying, and/or contradictory rulings and judgments (which would establish incompatible standards of conduct for Defendants). By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

  c.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

## CLAIMS FOR RELIEF

## FIRST CLAIM

**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681** *et seq.*
**Violation of 15 U.S.C. § 1681g(f)(7)(A)**
**On Behalf of the FCRA Classes**

41.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

42.    Plaintiff brings this claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, on behalf of the FCRA Classes, for violation of 15 U.S.C. § 1681g(f)(7)(A).

43.    Plaintiff is a "consumer" under the FCRA because Plaintiff is an individual. 15 U.S.C. § 1681a(c) ("The term 'consumer' means an individual.").

44.    The FCRA applies to Equifax Inc. and Equifax Consumer Services LLC because each of these entities is a "person" under the FCRA; each of these entities is a "consumer reporting agency" under the FCRA; and the credit reports of each of these entities are "consumer reports"

13

under the FCRA. 15 U.S.C. § 1681a(b), (d)(1), (f).

45. Under the FCRA, a "person" is an "individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." § 1681a(b).

46. Equifax Inc. is a "person" under the FCRA because it is a corporation. *Id.*

47. Equifax Consumer Services LLC is a "person" under the FCRA because it is an "other entity" (i.e., a limited liability company). *Id.*

48. Under the FCRA, the term "consumer reporting agency" means "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

49. Equifax Inc. is a "consumer reporting agency" under the FCRA because it is a person which, for monetary fees, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

50. Equifax Inc. has admitted in a recent public filing that it is a "consumer reporting agency" and that the FCRA applies to it. *See* Parties, *supra*, at ¶ 27.

51. Equifax Consumer Services LLC is a "consumer reporting agency" under the FCRA because it is a person which, for monetary fees, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on

consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

    52.    Under the FCRA, the term "credit score":

> (i) means a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default (and the numerical value or the categorization derived from such analysis may also be referred to as a "risk predictor" or "risk score"); and

15 U.S.C.A. § 1681g(f)(2)(A).

    53.    The Equifax Credit Scores are "credit scores" as the FCRA defines that term in § 1681g(f)(2)(A).

    54.    Under the FCRA, a consumer reporting agency that provides a credit score to a consumer must:

> supply the consumer with a credit score that is derived from a credit scoring model that is widely distributed to users by that consumer reporting agency in connection with residential real property loans or with a credit score that assists the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer . . . .

15 U.S.C. § 1681g(f)(7)(A).

    55.    The Equifax Credit Scores are not "derived from a credit scoring model that is widely distributed to [lenders] by [Equifax] in connection with residential real property loans."

    56.    Nor are the Equifax Credit Scores credit scores that "assist[] the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer" because the Equifax Credit Scores do not correspond to the credit scores lenders use in over 90% of United States lending decisions in a

15

substantial number of cases.

57. Thus, when Equifax provided the Equifax Credit Scores to Plaintiff and the FCRA Class members, Equifax willfully or negligently failed to comply with § 1681g(f)(7)(A).

58. Equifax's liability to Plaintiff and the FCRA Class members arose from the same unlawful policies, practices, or procedures.

59. Equifax's violations of § 1681g(f)(7)(A) were willful in that (i) it knew, or reasonably should have known, that it was failing to comply with the FCRA and/or (ii) it was acting in reckless disregard of its responsibilities under the FCRA.

60. In the alternative, Equifax's violations of § 1681g(f)(7)(A) were negligent in that it had affirmative statutory duties to provide credit scores that complied with § 1681g(f)(7)(A), but failed to comply with this statutory duty.

61. If Equifax willfully violated § 1681g(f)(7)(A), Plaintiff and the FCRA Class are entitled to damages, as specified in § 1681n.

62. In the alternative, if Equifax negligently violated § 1681g(f)(7)(A), Plaintiff and the FCRA Class are entitled to damages at a separate proceeding, as specified in § 1681o.

63. Therefore, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A. certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

  C. declaring that Defendants have committed the violations of law alleged herein;

  D. providing for any and all injunctive relief the Court deems appropriate;

  E. awarding statutory damages in the maximum amount for which the law provides;

  F. awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

  G. awarding punitive damages in accordance with proof and in an amount consistent with applicable precedent;

  H. providing for any and all equitable monetary relief the Court deems appropriate;

  I. awarding Plaintiff [his/her] reasonable costs and expenses of suit, including attorneys' fees;

  J. awarding pre- and post-judgment interest to the extent the law allows; and

  K. for such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Date: June 5, 2018

Respectfully submitted,

**REESE LLP**

By: */s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
Matthew David Schultz
*mschultz@levinlaw.com*
316 South Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

*Counsel for Plaintiff and the Proposed Classes*