UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN MOLINARI, individually and on
behalf of all others similarly situated,

                 Plaintiff,                         MEMORANDUM AND ORDER
                                                          18-CV-3282
    - against -


EQUIFAX INC. and EQUIFAX
CONSUMER SERVICES LLC,

                Defendants.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

        Plaintiff John Molinari ("Plaintiff" or "Molinari") brought this putative class action against Defendants Equifax, Inc. and Equifax Consumer Services LLC, (collectively, "Equifax") for selling credit scores that are not derived from a widely used credit scoring model in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. (ECF No. 1, "Complaint"). Pending before the Court is Equifax's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 14). For the reasons explained below, the motion is **GRANTED**.

## BACKGROUND

        Equifax is one of the nation's largest credit reporting agencies that collects certain credit information from would be borrowers and provides it to various businesses.[1] It also markets and sells credit-related products directly to consumers, such as credit scores, which are numerical

---

[1] *See* U.S. Consumer Financial Protection Bureau, *CFPB Orders TransUnion and Equifax to Pay for Deceiving Consumers in Marketing Credit Scores and Credit Products*, https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-transunion-and-equifax-pay-deceiving-consumers-marketing-credit-scores-and-credit-products/, (January 3, 2017).

1

summaries, typically between 300 and 850, designed to predict whether consumers are likely to pay their debts and are relied on by lenders.[2] Lenders rely on credit scores that are created by a variety of different scoring models, but the models relied on most often are those developed by the Fair Isaac Corporation ("FICO").[3] In addition to FICO credit scores, several companies, including this Defendant, have developed credit score models intended only to advise a consumer as to how his creditworthiness may be regarded by lenders. Those models that have been developed for this purpose differ from those developed by FICO and are rarely used by lenders.[4] One such model creates a credit score unique to Equifax and is referred to as the "Equifax Credit Score."[5]

On May 29, 2015, Molinari purchased his credit score from Equifax through its website, www.equifax.com. (Complaint ¶¶ 2, 12-13). Before clicking on the link to purchase his score, he was directed to a webpage that provided at the bottom of the page and in fine print,

> What You Need To Know: The Equifax Credit Score is based on the Equifax Credit Score Model. Third parties use many different types of credit scores and will not use the Equifax Credit Score to assess your creditworthiness.

(*Id.* at ¶ 5). Despite this disclaimer, Molinari believed he was receiving a credit score that would be provided to and used by lenders. (*Id.*).

On January 3, 2017, the U.S. Consumer Financial Protection Bureau ("CFPB") investigated Equifax's <u>marketing practices</u> and concluded that from July 21, 2011 through March 14, 2014, Equifax violated the Consumer Financial Protection Act by deceptively marketing its

---

[2] *Id.*

[3] *In the Matter of Equifax*, CFPB Consent Order, No 2017-CFPB-0001, ¶¶ 10-11 (Jan. 3, 2017) (the "CFPB Consent Order").

[4] *Id.* at ¶ 12.

[5] *Id.* at ¶ 14.

credit scores to consumers.[6] It also concluded that "there were significant and meaningful differences between the Equifax Credit Scores . . . and the variety of [FICO scoring models] used by lenders." *See* CFPB Consent Order ¶ 20. On June 5, 2018, Molinari, relying on that conclusion, brought this lawsuit on behalf of himself and others who purchased Equifax Credit Scores between June 5, 2013 and June 5, 2018. (Complaint ¶¶ 6-7, 9).

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

---

[6] The CFPB concluded that "Equifax deceptively marketed credit scores to consumers by falsely representing . . . that the scores it marketed and sold to consumers were the same scores lenders typically use to determine creditworthiness." *Id.* at 1. Some examples of those deceptive marketing practices include: "Your loan officer is reviewing your credit score. See your score" and "Banks and lenders will most likely check your credit – make sure you see what they see and learn what that means for FREE." *Id.* at ¶ 16. Notably, Molinari does not claim that he saw those advertisements or that those advertisements caused him to purchase his Equifax Credit Score.

# DISCUSSION

## I.  Statute of Limitations

Consumers are required to bring suit under the FCRA "no[] later than the earlier of— (1) 2 years after the date of discovery by the plaintiff of the violation . . . or (2) 5 years after the date on which the violation . . . occurs." 15 U.S.C. § 1681p. Equifax argues that Molinari's claim is time-barred because it was brought more than two years after he purchased his Equifax Credit Score, which is when he had "inquiry notice" of the violation. (ECF No. 14-1 at 7). More specifically, Equifax claims that (1) Molinari was on notice of the violation due to Equifax's disclaimer on its website and (2) Molinari should have been aware of two other CFPB reports, which explained that the scores were advisory, for use only by the purchaser, and were issued before he purchased his own Equifax Credit Score. (ECF No. 14-1 at 8). Molinari, on the other hand, argues that (1) Equifax's disclaimer was ineffective because it was neither clear nor conspicuous and (2) there is "no factual or legal foundation to support a presumption that ordinary people read CFPB reports, or even know that the CFPB exists," and therefore the reports could not have put him on inquiry notice. (ECF No. 17 at 5-7).

First, there is an issue of fact as to whether the disclaimer on Equifax's website was clear and conspicuous because of its fine print and where it was located on its webpage. (Complaint ¶ 5). Therefore, it is unknown at this stage whether Molinari actually read or otherwise knew of the disclaimer.[7] Second, despite doubting whether "ordinary people read CFPB reports," Molinari himself relies on one such report in his Complaint, (Complaint ¶¶ 6-7), which gives rise to the

---

[7] Equifax argues that Molinari admitted in his Complaint that he did in fact read the disclaimer. Molinari alleged, after displaying the webpage on Equifax's website, that "Plaintiff and other consumers relied upon these representations to believe that the credit score they were receiving was the same credit score provided to and used by lenders." (Complaint ¶ 5).

question of his knowledge of CFPB reports before he purchased his challenged Equifax Credit Score.

Experience would inform that awareness of the challenged Equifax Credit Score would come either when Molinari's application for an extension of credit was denied by a lender or when Molinari separately purchased a FICO credit score that was significantly different from his Equifax Credit Score. Accepting that view, it would follow that Molinari became aware of the alleged FCRA violation at those events rather than when he purchased the Equifax Credit Score. Accordingly, the Court finds that "a reasonably diligent plaintiff would [not] have discovered" that Equifax violated the FCRA at the time the Equifax Credit Score was purchased and therefore Molinari's claim is timely. *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 119 (2d Cir. 2017); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 412 (2d Cir. 2008) (noting that "determining whether a plaintiff had sufficient facts to place it on inquiry notice is often inappropriate for resolution on a motion to dismiss.").

## II. Molinari's Claim Under Section 1681g(f)(7)(A) of the FCRA

While the CFPB concluded that Equifax violated the Consumer Financial Protection Act because of its deceptive <u>marketing</u> practices, Molinari claims only that Equifax violated an entirely different statute, Section 1681g(f)(7)(A) of the Fair Credit Reporting Act, which provides, in relevant part, that a consumer reporting agency shall

> (A) supply the consumer . . . with a credit score that assists the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer; **and**
> (B) a statement indicating that the information and credit scoring model may be different than that used by the lender.

(emphasis added). According to that statute, a credit reporting agency must (A) provide the consumer with a credit score that, as described above, will advise consumers of their

5

creditworthiness *and* (B) tell the consumer that he is purchasing a credit score derived from a model that will not be used by lenders. Notably, complying with subsection (B) of the statute, as Equifax seemingly did here through its disclaimer, does not necessarily mean that Equifax has provided the understanding required by subsection (A) of the statute. For example, if Equifax's credit scoring model differs from FICO's scoring model, the gap between them may be so wide that the Equifax consumer is not informed of his creditworthiness because the lenders will rely on the FICO scoring model. That result, Molinari claims, makes the Equifax Credit Score he purchased worthless. (Complaint ¶ 14).

In addition to claiming that its score complies with the statute, Equifax argues that Molinari does not have standing to bring this action because he alleged no facts regarding his own Equifax Credit Score experience and how it differed from the scores typically used by lenders. (ECF No. 14-1 at 11-12). Molinari, in response, argues that he need not allege anything more than "at the time [he] purchased his Equifax Credit Score, the Equifax Score did not comply with § 1681g(f)(7)(A)," that is, it did not assist him in understanding his creditworthiness. (ECF No. 17 at 16). His argument is flawed. To satisfy Article III standing, a plaintiff must demonstrate (1) "injury in fact," (2) a "causal connection" between that injury and the conduct complained of, and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Supreme Court recently held that even in FCRA cases, a plaintiff must allege that his injury is "both concrete *and* particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016), *as revised* (May 24, 2016) (emphasis in original). In other words, the injury must be "real," not "abstract," and "must affect the plaintiff in a personal and individual way." *Id.* at 1548. Further, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement simply because a statute" creates a private right to sue. *Id.* at 1549. For example, in

*Spokeo, Inc. v. Robins*, the Court held that the plaintiff could not allege a bare FCRA violation against the defendant consumer reporting agency, who published false information about the plaintiff's age, education, family status, and employment, "divorced from any concrete harm" resulting from publishing that false information, and successfully satisfy the injury-in-fact requirement of Article III standing. *Id.* at 1546, 1549.

The Second Circuit analyzed the standing doctrine announced by *Spokeo* and noted that while alleging a bare violation without any concrete harm does not satisfy the injury-in-fact requirement, it does "not mean . . . that the *risk* of real harm cannot satisfy the requirement of concreteness." *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 80 (2d Cir. 2017) (citing *Spokeo*, 136 S. Ct. at 1549). Thus, "the critical question for standing purposes is 'whether the particular . . . violation[] alleged in this case," i.e. providing consumers with worthless credit scores, "entail[s] a *degree of risk* sufficient to meet the concreteness requirement." *Id.* (emphasis in original).

Having reviewed the Complaint, the Court finds that Molinari did not allege a violation of Section 1681g(f)(7)(A) of the FCRA that creates a real risk of a concrete injury. Molinari claims that "[a]s a result of the significant difference between the Equifax Credit Scores . . . and the credit scores provided to the vast majority of lenders, the Equifax Credit Scores do not meaningfully assist consumers in understanding how lenders will assess their credit worthiness . . . ." (Complaint ¶ 8). Critically, Molinari did not allege *what* the significant difference was between his Equifax Credit Score and the score that would be provided to lenders or *how* he knew that his Equifax Credit Score did not meaningfully assist him. *Cf. Sgouros v. Transunion Corp.*, No. 14 C 1850 (JBZ), 2016 WL 4398032, at *1 (N.D. Ill. Aug. 18, 2016) (noting that plaintiff "learned from a car dealership lender that the credit score that lender was provided was more than 100 points lower

than the number contained in [defendant's] Consumer Credit Score that [plaintiff] purchased" and that "[t]he car dealership lender refused to extend [plaintiff] his desired auto loan based on the lower score.").

Indeed, rather than relying on his specific experience in purchasing his Equifax Credit Score, Molinari clearly relied on a portion of the CFPB's conclusions in its Consent Order to support his claim. His selective reliance on that Consent Order is misplaced because (1) the report concluded that Equifax violated the Consumer Financial Protection Act because of its <u>marketing</u> practices, not the Fair Credit Reporting Act, an entirely different statute containing different requirements for consumer reporting agencies and (2) the CFPB concluded that Equifax engaged in deceptive marketing practices from July 21, 2011 through March 14, 2014, while Molinari's Complaint alleges that the FCRA violations occurred between June 5, 2013 and June 5, 2018, a time period that has minimal overlap with the CFPB's review. Accordingly, the Court finds that Molinari does not have standing to bring this claim and therefore it is dismissed. Having dismissed this claim, the Court need not determine whether Equifax willfully violated the statute.

## CONCLUSION

Accordingly, for the reasons explained above, Equifax's motion to dismiss is **GRANTED** without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
July 31, 2019

/s_____
I. Leo Glasser                          U.S.D.J.